**AVERY et al. v. INTERSTATE GROC. CO. et al.**

No. 17103—Opinion Filed June 29, 1926.

1. **Taxation—Source of Power—License Tax on Motor Vehicles.**

The authority to impose license tax upon motor vehicles must be found in the Constitution and statutes, whether predicated upon the taxing power or upon the police power of the state.

2. **Same—Property Must Have Situs.**

In order to impose a license tax upon foreign trucks and other commercial motor vehicles using the public highways of this state while moving in interstate commerce, such vehicles must have an actual situs in the state, as by common law, or a situs for taxation purposes created by statute; and it is competent for the Legislature to create such situs for such purpose.

3. **Same—Under Present Law Foreign Motor Vehicles Moving in Interstate Commerce Have no Situs for Taxation for Sixty Days.**

Section 10129, C. O. S. 1921, requiring every owner of motor vehicle, whether in operation on the highways or in storage, to register the vehicle and procure a license tax therefor, etc., when construed in pari materia with section 10137, Id., providing that any foreign vehicle bearing a legal native tag showing compliance with the registration and licensing laws of the state from which it

came, may use the highways without additional license in this state for not more than 60 days in any one year, does not create a situs for taxation of foreign trucks and other commercial vehicles using the highways while moving in interstate commerce and not remaining within the state longer than 60 days.

4. **Same—Same Rule as Above—Under the Police Power.**

Under the police power, in the absence of federal legislation upon the subject, this state may prescribe uniform regulations reasonably necessary for public safety and order in respect to the operation upon its highways of motor vehicles moving in interstate commerce, and to that end may require the registration of such vehicles, charging therefor reasonable fees graduated according to horsepower of the engines, and may require the licensing of drivers. By the statutes referred to above, and other provisions of the motor vehicle law, the Legislature has not so done, except as to such vehicles using the highways more than 60 days in one year.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Ottawa County; J. J. Smith, Judge.

Action by Interstate Grocery Company et al. against Cyrus Avery et al., Commissioners of the State Highway Commission of the State of Oklahoma. Judgment for plaintiffs, and defendants appeal. Affirmed.

George F. Short, Atty. Gen., and Chas. Hill Johns, Asst., for plaintiffs in error.

Grover C. James and Vern E. Thompson, for defendants in error.

Opinion by ESTES, C. In 1925, the Interstate Grocery Company and other corporations and persons, defendants in error, plaintiffs below, owned, kept, and maintained certain automobiles and motor trucks in Kansas and Missouri. They had paid the license tax required by the laws of those states, and at all times referred to herein, exhibited on such vehicles. the license tags showing the numbers and the name of the state, and otherwise complied with the motor vehicle laws of those states respectively. These vehicles were sent from time to time on business errands into the different counties of that part of Oklahoma, contiguous to said states, and returned upon completion of such business and commercial trips, moving thus in interstate commerce. None of them were kept or maintained for business or any other purposes within the state of Oklahoma continuously for 60 consecutive days. Plain-

tiffs in error, as commissioners of the State Highway Department of the state of Oklahoma and as executive officers of this state, were seizing these vehicles and arresting the drivers thereof, under the motor vehicle laws of this state, to require the registration and payment of license tax upon such vehicles. Defendants in error procured a permanent injunction in the district court of Ottawa county, Okla., preventing such arrests and seizures. No question is made of the regularity of the proceedings nor of the propriety of such remedy. The errors presented for review by plaintiffs in error, in our opinion, present only the construction of the motor vehicle law of this state as applied to said facts.

1. The Constitution provides that taxes shall be levied and collected by general law, the Legislature to confer such power on local authorities and to classify property and provide methods of evaluation. "All property in the state shall be subject to taxation." Executive and ministerial officers must, in tax matters, keep strictly within the authority conferred. Pierce, Co. Treas., v. St. L. & S. F. Ry. Co., 110 Okla. 141, 237 Pac. 106. The authority of plaintiffs in error to impose the license tax upon such motor vehicles must be found in the Constitution and statutes. We deem this to be true whether the authority of plaintiffs in error be predicated upon the taxing power or upon the police power of the state.

2. While it may be stated. as a general rule of law, that personal property has no situs except that of the domicile o. the owner, yet this doctrine yields whenever it is applied to the taxation of personal property. The Prairie Cattle Co. v. Williamson, 5 Okla. 488, 49 Pac. 937. That is, it is not necessary that the owner should reside within the state to render his personal property situated within the state liable to taxation. Section 9533, C. O. S. 1921, classifies personal property for the purposes of taxation. The Legislature has jurisdiction to tax "transient property," and may provide a different procedure in respect thereto from that provided for other property. See Boyd et al. v. Wiggins et al., 7 Okla. 85, 54 Pac. 411. involving a transient property statute. At common law, actual situs of personal property is necessary for taxation. Situs meaning generally, situation. location. where the thing is. Green County v. Wright (Ga.) 54 S. E. 951; Godfrey. Sheriff et al. v. Wright et al., 8 Okla. 151. 56 Pac. 1051. Now, in order to tax the cars in controversy as personal property, they must have

actual situs at common law in this state, or a situs for taxation purposes created by the Legislature in order to be "property in this state", and thus subject to taxation Of course the vehicles in controversy were physically present within the state—they were located here when seized—but their presence and location were only temporary. They were not "situated" or "located" in this state, within the meaning of those terms at common law, to give them situs for taxation purposes.

"A short stay of movables during their transit through a place is not within the meaning, but, (referring to a tax law), in the ordinary sense, movables are situate in the place where they are used day a.ter day; where they are stored, housed. or stabled. when not in actual use, and where the business in which they are employed is done." Lathe v. Scoff, 60 N. H. 34, 35.

See. also, 7 Words & Phrases, 6524. and Ingram v. Cowles (Mass.) 23 N. E. 48. The situs of personal property for the purpose of taxation depends, in a great measure, upon the nature of the property. This is shown by the decisions on situs of chattels and by the statutes pertaining particularly to taxation of intangible property. If a chattel have a tangible existence, it is taxable in the locality in which it is situated. Boyd v. City of Selma (Ala.) 11 So. 393, 395, 16 L. R. A. 729, 733. It were competent for the Legislature to give these commercial vehicles situs in this state for the purpose of taxation, subject to constitutional and reasonable requirements. 37 Cyc. 952.

"In the absence of some statute regulating the 'situs' of property for taxation, it is governed by the common law in regard to actual situs. It is competent. however, for the Legislature to give thereto for the purpose of taxation any situs it sees fit, subject to the rule of uniformity and to the limitation that there must be some appreciable relation between the municipality exacting the tax and the person upon whom the burden is cast, either directly or by reference to the property taxed, from which there can be reasonably seen reciprocal duties to accord benefits on the one hand, and to respond therefor on the other. Whether that relation does or does not exist in any given circumstance is so conclusively a legislative question that nothing short of manifestly capricious action, amounting to a taking of property for a public use without just compensation, will justify judicial interference." Chicago & N. W. R. Co. v. State, 108 N. W. 557, 589, 128 Wis. 553.

3. It thus remains to determine whether the Legislature has so done, since such

transient vehicles have no common law situs in this state. Section 10129, Id., in part, is:

"Every owner or custodian of a vehicle with motor attachment having value, whether in operation on the public highways of this state or in storage, shall, except as herein otherwise expressly provided, cause to be filed, by mail or otherwise, in the office of the Department of Highways, or with its agent, a verified application for registration," etc.

Section 10137, Id., is:

"Foreign Vehicles. Any foreign vehicle bearing a legal native tag or mark showing that it has complied with the laws of the state or country from which it came relating to the registration and licensing of vehicles, may use the roads and streets of this state without obtaining additional license or registration, within this state, for a period of not more than 60 days in any one calendar year."

It is the contention of the Attorney General for plaintiffs in error, that such first statute is absolute, and that thereby every motor vehicle, including the transient trucks and automobiles in question, is bound to pay the current license and otherwise comply with the motor vehicle law of Oklahoma before using, in any manner, the public highways of this state; and that the second section above provides an exception in favor of those foreign vehicles coming into the state on missions of pleasure and visitation. It is a fundamental canon that statutes in pari materia should be considered together to determine the legislative intent. DeGraffenreid et al. v. Iowa Land & Trust Co., 20 Okla. 687, 95 Pac. 624, and Board of County Com'rs v. Ryan, Co. Treas., 107 Okla. 278, 232 Pac. 834. Said first section further provides that any motor vehicle, as therein defined, shall be subject to seizure, unless the same bears the tag, etc. Section 10134, Id., provides that no person shall operate or drive a motor vehicle on the public highways of this state unless the same have the number plates assigned to it by the department, etc. We first observe that the first section is primarily an inhibition against, and imposes duties upon, the owner or custodian of the vehicle. If the vehicle have value, and the owner either operates it upon the public highways, or keeps it in storage, his duty is to apply for registration. This section does not attempt to fix the situs of transient vehicles. Those in storage would have a common-law situs. This section does not declare when or upon what terms or conditions a foreign car, temporarily in the state, shall acquire a situs here for taxation. We observe that the second section above is comprehensive in its terms— it includes all foreign vehicles. Not only does it not exclude transient commercial vehicles, but, by its very terms, it seems to include them among the vehicles which may use the roads and streets of the state without obtaining additional license or registration for a period of not more than 60 days in one year. Thereby, any foreign car attains local situs in 60 days. This section pertains directly to the vehicle—not the owner or custodian—and is not in the nature of an exception to the first statute above.

4. Nor do we consider that there is authority in the statutes for requiring registration and collection of license fees by plaintiffs in error, when construed under the police power of the state, for the reasons given above. Such transient vehicles as those in question seem not to have been within the contemplation of the Legislature in enacting the motor vehicle law in 1919, perhaps because such interstate commerce had not then so fully developed. Hendrick v. Maryland, 235 U. S. 610, 59 L. Ed. 385, is relied upon by the state. Hendrick, a resident of the District of Columbia, drove his automobile into Maryland, and while temporarily there, was arrested for operating same upon the highways without having procured a certificate of registration required by Maryland. His conviction was affirmed by the Supreme Court. The statute he was held to have violated is:

"Before any motor vehicle is operated upon the highways, the owner shall make a statement to the commissioner and procure a certificate of registration: thereafter, it shall bear a number plate. This certificate and plate shall be evidence of authority for operating the machine during the current year."

The act further provided that the registration fees should be fixed according to horsepower and that no person should drive a vehicle upon the highway until he had obtained the license. The court, speaking by Mr. Justice McReynolds, held:

"The absence of federal legislation upon the subject leaves the states free to prescribe uniform regulations reasonably necessary for public safety and order in respect to the operation upon their highways of motor vehicles moving in interstate commerce, and to that end they may require the registration of such vehicles and the licensing of their drivers, charging therefor reasonable fees graduated according to the horsepower of their engines."

We do not hold that this state could not

thus regulate motor vehicles moving in interstate commerce, as those involved, from the moment they enter the state, but that it has not so done. In sa'd opinion, the court observed that Hendrick failed to show that he had complied with the laws in force in the District of Columbia in respect to registering motor vehicles and licensing operators, or that he applied to the Maryland commissioner for an identifying tag or marker—prerequisites to a limited use of the highways without cost by residents of other states; and that therefore his right to the limited use of highways was not involved. In the instant case it is not contended that the vehicles had used the highways of this state for more than 60 days during that year; but that it was the intention of the Legislature to exclude them from the class entitled to such limited use. If they were so excluded by the terms of said second quoted section, or if the terms of the first quoted section were absolute, and, standing alone, included them, as did the Maryland statute, or if the two sections together could be construed as including them, then the Maryland case would be decisive in favor of the state herein.

Further, as showing that the Legislature did not contemplate the transient foreign vehicles in controversy, it may be observed that section 10139, Id., provides that all fees collected under the law shall be apportioned, ten per cent. to the state treasury, and the balance to the treasurers of the respective counties from which collected, the county treasurer to pay a portion of his receipts to certain cities for street and alley fund. Since the vehicles in controversy used the highways of numerous counties, if the Legislature had contemplated that they should be taxed, it had provided some system for apportioning such tax among the various counties whose roads were so used. The Highway Department, under present statutes, would not know to what county treasurers to pay or apportion such tax if collected. This follows from the fact that such apportionment statute contemplates a situs of the vehicles in the counties from which the fees are collected and to which 90 per cent. thereof is returned.

The Attorney General also urges that the recent administrative construction of the motor vehicle law by the State Highway Department is consonant with his contention herein. The trial court admitted evidence to this effect, but such evidence is nothing more than the opinion of the officers upholding their contention herein, and cannot supplant the statutes. That the public

highways of this state are built and maintained at great expense, and that foreign commercial motor vehicles should compensate for their wear and tear thereof, is conceded. But that is a matter of legislative, not of judicial, cognizance.

Let the judgment be affirmed.

By the Court: It is so ordered.